IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WALLY H.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:22-cv-01536-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Wally H. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for the immediate payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in April 1961, plaintiff alleges disability beginning February 13, 2017,[3] due to deafness, arthritis, diabetes, hip replacement, chronic wide-spread pain, and nephropathy. Tr. 199. His application was denied initially and upon reconsideration. On March 22, 2021, a hearing was held before an Administrative Law Judge ("ALJ") wherein plaintiff was represented by counsel and testified, and as did a vocational expert ("VE"). Tr. 29-52. On June 15, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-28. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity from the alleged onset date ("AOD") through date last insured ("DLI") of March 31, 2019. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "obesity; degenerative disc disease with laminectomy and spine tumor removal in 2013; status post left hip replacement; bilateral sensorineural hearing loss with Cochlear implants; and cervical stenosis." *Id*. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff

---

[2] The record before the Court constitutes over 2200 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] Plaintiff initially alleged disability as of January 6, 2013, but amended the onset date at the hearing to coincide with the medical record. Tr. 35, 541-43.

Page 2 – OPINION AND ORDER

had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R § 404.1567(b) except: "[He] could occasionally climb ladders, ropes or scaffolds[;] and frequently stoop, crouch, crawl and kneel. [He] should avoid all exposure to workplaces hazards [and] noise in excess of office level. [He] can perform hearing on a frequent basis." Tr. 19.

At step four, the ALJ determined plaintiff could perform his past relevant work as a computer programmer. Tr. 23.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to develop the record in regard to his hearing loss and not adequately considering that impairment at step three and beyond, (2) rejecting his subjective symptom testimony, and (3) improperly assessing the medical opinions of Karen Ballard, F.N.P., and James Sok Chong, D.O.

**I.     Hearing Loss**

Plaintiff contends "the ALJ committed harmful legal error by not discussing [his] hearing loss at Step Three . . . under Listing 2.11." Pl.'s Opening Br. 4-5 (doc. 13). According to plaintiff, "[h]ad the ALJ acknowledged this impairment at Step Three, she would have had to accept that the record related to [his] hearing loss required further development [because testing was last] was done in 2012 [and it] is not even clear that the numbers cited by the reviewing sources were set out in a manner that corresponds to the criteria set out in [the relevant] Listing." *Id*. at 6.

At step three, the ALJ assesses whether the claimant has an impairment or combination of medically determinable, severe impairments that meets or equals a listing. *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). The claimant bears the burden of demonstrating that "all of the specified criteria [are met]." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Page 3 – OPINION AND ORDER

Listing 2.11, which concerns hearing loss treated with cochlear implantation, requires a word recognition score of 60% or less with any version of the Hearing in Noise Test ("HINT"), "conducted in quiet." C.F.R. Pt. 404, Subpt. P, App. 1, Listing 2.11(B).

Plaintiff had a hearing evaluation in September 2012 – i.e., four months prior to his initial AOD. Tr. 397-98. HINT testing showed that he had a "speech perception" score of 75% in his left ear and 34% in his right ear in a "quiet" environment. *Id*. The accompanying chart note reflected plaintiff's comment that "he has been hearing well with the implant" but wanted his "device a little louder." *Id.* An adjustment was made, after which he was able to hear within normal limits. *Id*. Concerning his right ear, plaintiff noted that he "stopped wearing [a] hearing aid [in 2002] due to lack of benefit"; his medical provider recommended that he be evaluated for a cochlear implant in his right ear. *Id*.

The state agency consulting sources expressly considered this evidence, along with Listing 2.11, in assessing plaintiff's claim. Tr. 58, 60, 62, 73, 75, 77. The ALJ, in turn, found plaintiff's hearing loss medically determinable and severe at step two. Tr. 17. And, although the ALJ did not explicitly analyze Listing 2.11, she did evaluate the medical and other evidence relating to plaintiff's hearing loss in formulating the RFC, including the state agency consulting source opinions (which she deemed "persuasive"). Tr. 20-23.

Under these circumstances, any step three error was harmless. See *Pitts v. Colvin*, 2016 WL 6217068, *5 n.2 (W.D. Penn. Oct. 25, 2016) (ALJ's failure to analyze the claimant's hearing loss pursuant to Listing 2.11 was harmless where the claimant "scored a 79% on the HINT" at his last otolaryngologist appointment); *see also Lewis v. Apfel*, 236 F.3d 503, 512-14 (9th Cir. 2001) (ALJ's failure to make detailed findings at step three does not constitute reversible error provided the ALJ discusses the relevant evidence in other portions of the decision).

Moreover, the fact that plaintiff amended his AOD at the 2021 hearing does not equate to an inadequacy or ambiguity in the record warranting further proceedings. *See, e.g.*, *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Plaintiff worked for over a decade with the same right-sided hearing impairment and never followed-up on his specialist's recommendation concerning a cochlear implant. Regarding his left-sided hearing impairment, plaintiff did not seek further treatment until 2017 – his cochlear implant was then updated. In June 2017, plaintiff described his updated cochlear implant as "superior to his old N5 processor." Tr. 381. There are no other medical records associated with plaintiff's left-sided hearing loss from within the adjudication period. Therefore, while no additional formal HINT testing occurred, the medical record before the Court does not reflect a material change in condition prior to the DLI.

## II. Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting his subjective symptom testimony concerning the extent of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal

citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that he was unable to work due to his back pain and hearing impairment. Tr. 40, 46. Regarding the former, plaintiff explained that his back pain became more widespread, severe, and unpredictable in early 2017. Tr. 45-46. His pain makes it difficult to sit for more than ten-to-fifteen minutes, or maintain the concentration necessary to work or even complete certain regular tasks. Tr. 40; *see also* Tr. 48 ("if I'm working on checks for my taxes, it can take six hours to do because I can't sit and think about what they want from me"). Plaintiff testified that he tries to perform small chores, such as cleaning one room or taking out the trash, but must lie down afterward for 15-20 minutes. Tr. 41, 44. Even with no physical activity, plaintiff stated he needs to lie down "at least" 3-4 times per day. Tr. 44-45. When questioned about driving habits, plaintiff explained he drives only to run errands and buy groceries because "long trips are hard." Tr. 38.

Concerning the latter, plaintiff stated that, after he stopped working in 2013, he "wasn't able to participate in certain things and while the [new processor] helped, it didn't bring it back up

Page 6 – OPINION AND ORDER

to where it was before." Tr. 46-47. Plaintiff reported that his hearing impairment also makes it hard to concentrate and retain oral information. Tr. 46, 48.

After summarizing plaintiff's hearing testimony, the ALJ determined plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr 21. The ALJ specifically cited to plaintiff's activities of daily living ("ADLs") and the fact that the medical record supports the RFC related to plaintiff's degenerative disc disease. Tr. 21-22.

An ALJ may discredit a claimant's testimony when he or she reports activities of daily living that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). Here, substantial evidence supports the ALJ's determination in relation to plaintiff's subjective statements about hearing limitations, but not back pain.

As the ALJ noted in regard to plaintiff's hearing loss, the record reflects that plaintiff attended community college, applied for jobs, and participated in interviews. Tr. 440, 516. And, as discussed in Section I, the medical record demonstrates that plaintiff complained briefly of hearing problems in 2017 prior to having his left cochlear implant updated, but there is no evidence of any treatment after that point for either his left or right ear. Tr. 380, 543. Finally, there is no indication that his hearing loss significantly impacted his ability to communicate with medical providers. While plaintiff proffers a more favorable interpretation of this evidence, the ALJ's interpretation must be upheld because it was reasonable. *See Febach v. Colvin*, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize

Page 7 – OPINION AND ORDER

activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).

However, the ALJ mischaracterized the record in evaluating plaintiff's back pain testimony. See *Reddick v. Chater,* 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). That is, when the full context of plaintiff's statements is considered, there is no inconsistency.

Plaintiff testified that he was not able to attend in person classes at the community college due to back pain and had to transfer to an online program. Tr. 39. And, although he reported engaging in activities such as house cleaning, taking out the trash, walking his dog, self-care, grocery shopping, driving, preparing meals, and socializing with family, there were significant qualifications. Tr. 183-84, 211-14. Consistent with his hearing testimony, the record reflects that he rests after physical activity and engages in "limited" cleaning two to three times per month. Tr. 211-12. His wife does most of the cooking, but he prepares a basic meal "if needed." Tr. 212. He socializes with family a few times per year but otherwise communicates with them via email. Tr. 214. His ADLs are dictated by pain intensity, causing him to spend three to five days per month bedridden. Tr. 184. Although there are two terse references in the record showing that plaintiff wanted to work or sought out employment, there are no additional details as to how plaintiff engaged in those activities and, in any event, he never worked during the adjudication period or after. See *Nathan L. v. Comm'r Soc. Sec. Admin.*, 2023 WL 3946622, *2 (D. Or. June 12, 2023) ("[a]n ALJ may not use an unsuccessful work attempt to discredit a claimant's subjective symptom testimony").

Page 8 – OPINION AND ORDER

Therefore, activities such as plaintiff's – i.e., occasionally socializing with family, unsuccessfully looking for work, attending online community college, and taking several hours, with frequent breaks, to complete relatively limited tasks – are neither transferable to a work setting nor contradict claims of a totally debilitating impairment. *See Morgan v. Colvin*, 2013 WL 6074119, *5-6 (D. Or. Nov. 13, 2013) (reversing the ALJ's credibility finding under analogous circumstances). Finally, as discussed in greater detail below, the medical record demonstrates that, despite undergoing surgery and a number of modalities of treatment, plaintiff continued to experience limitations associated with his back pain beyond those articulated in his RFC.

In sum, the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony concerning his back pain. The ALJ's decision is reversed as to this issue.

### III.   Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited the medical opinions of Ms. Ballard and Dr. Chong. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[4] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021).

---

[4] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

Page 9 – OPINION AND ORDER

The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

In April 2014, plaintiff initiated a primary care relationship with Ms. Ballard, predominantly for diabetic management and back pain. Thereafter, plaintiff saw either Ms. Ballard or another provider within the same practice group approximately every three to six months through the DLI. *See, e.g.*, 439-616. In February 2017, plaintiff reported to Dr. McCook, Ms. Ballard's colleague, and putative supervisor, that his back pain had significantly worsened over the past six months. Tr. 514. In February 2018, Ms. Ballard transferred plaintiff's care to Dr. Chong. Tr. 512. At that time, Dr. Chong reviewed plaintiff's medical record and began treating his back pain. *Id*. He did not see plaintiff in person again until January 2020. Tr. 489, 1058, 1750.

### A. Ms. Ballard

In July 2019, Ms. Ballard completed a treating source statement at the request of plaintiff's attorney. Tr. 1042-43. She listed plaintiff's diagnoses as profound hearing loss with cochlear implant, history of spinal mass and resection, chronic thoracic back pain, and diabetic neuropathy. Tr. 1042. Ms. Ballard described plaintiff's symptoms as "difficulty hearing with any background noise [or] over the phone" and back pain based on scarring documented by MRI from his previous spinal surgery. *Id*. She indicated, per his report, plaintiff needs to lie down for 30 minutes after physical activity and that "he would have difficulty doing a physical job for 40hrs/week." *Id.* Although Ms. Ballard was "unable" to quantify the number of absences plaintiff would experience in a month due to his impairments, she did opine it was "likely he could not keep up." Tr. 1042-43.

The ALJ found Ms. Ballard's opinion unpersuasive because it "does not provide functional limitations, is not supported by objective treatment notes nor [is it] consistent with [the] longitudinal record." Tr. 22. The ALJ noted that plaintiff was never observed to be in acute distress, routinely had normal physical exams, had full strength in all four extremities, and had a normal gait. Id. The ALJ also noted plaintiff required no more than routine and conservative care. Id. Further, the ALJ cited to plaintiff's improved hearing with the June 2017 cochlear implant update, as well as his ability to communicate effectively with providers, attend a community college program, and interview for work. Id.

As an initial matter, the ALJ is correct that the majority of Ms. Ballard's report does not contain any concrete-functional limitations. See *Sharon J. v. Comm'r*, 2020 WL 247195, *1 (D. Or. Jan. 16, 2020) (doctor's opinion that the claimant had certain "problems" did not qualify as a concrete functional imitation); see also *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (recommendations or suggestions from medical providers are not work-related limitations of function that need be reflected in the RFC); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity").

The sole concrete-functional limitation articulated – i.e., that plaintiff needs to lie down for 30 minutes after physical activity – appears to be based on plaintiff's statement and not on any independent examination findings as evinced by her chart notes. Indeed, Ms. Ballard's chart notes reflect cursory physical exams that were withing normal limits. See *Nicole P. v. Kijakazi*, 2023 WL 6366771, *4 (D. Or. Sept. 29, 2023) ("[a]n ALJ may reject medical source opinion evidence that is inconsistent with other medical opinions of record, the objective medical evidence, or the source's own treatment records" (citations omitted). Additionally, it is unclear what qualifies as a

Page 11 – OPINION AND ORDER

"physical activity" within the confines of Ms. Ballard's opinion. The ALJ's decision is affirmed as to Ms. Ballard's opinion.

### B.      Dr. Chong

In February 2021, Dr. Chong completed a treating source statement characterizing plaintiff's medical conditions.[5] Tr. 2200. Dr. Chong reported plaintiff suffered from thoracic and lumbar back pain, which limited his ability to rotate and bend, and caused muscle spasms and weakness. Tr. 2199. The doctor indicated his assessment was supported by previous imaging reports and physiatry and rehabilitation clinic records. *Id*. In relevant part, Dr. Chong opined plaintiff would miss four or more days of work per month, and could sit or stand for fifteen minutes before needing to change positions. Tr. 2200. Finally, he indicated the limitations specified in his report had existed since at least 2015. *Id*.

The ALJ found Dr. Chong's opinion unpersuasive because it was from outside the adjudication period, was not supported by "relatively normal treatment notes[,] and [was] not consistent with the entirety of the record." Tr. 22. The ALJ then relied on the same evidence regarding plaintiff's routine and conservative care, normal physical exams, full strength in all extremities, ability to attend community college and apply for work, etc., that she used to discredit Ms. Ballard's opinion. Tr. 22-23.

With regard to the ALJ's determination that Dr. Chong's opinion evidence was outside the adjudication period, "medical reports are inevitably rendered retrospectively and should not be

---

[5] Plaintiff initially requested a treating source statement from Dr. Chong in January 2020 (i.e., a few months post-DLI); however, Dr. Chong deferred, stating he wanted to have plaintiff assessed by a functional physical therapist or to consult with physiatry before completing the statement. Tr. 1750-52. Ultimately, Dr. Chong did not complete the statement until February 2021, after repeatedly seeing plaintiff (at times monthly), obtaining new spinal imaging, and reviewing records from physiatry. Tr. 2074.

Page 12 – OPINION AND ORDER

disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). And, here, Dr. Chong expressly related plaintiff's current symptoms back to the relevant time period. Tr. 2200. Thus, the ALJ erred in discrediting Dr. Chong's opinion on this basis.

Turning to the ALJ's remaining rationales, Dr. Chong did not proffer any opinion as to plaintiff's hearing impairment, such that the ALJ's reliance on plaintiff's ability to communicate effectively with providers, attend a community college program, and interview for work is misplaced. To the extent these activities are relevant to plaintiff's back pain, they do not contravene Dr. Chong's opinion, especially in light of the record as a whole.

Furthermore, the ALJ appears to have overlooked plaintiff's abnormal imaging studies, physical therapy and physiatry records, and extensive treatment history for back pain. *See, e.g.*, Tr. 337-73. For instance, a 2014 thoracic spine x-ray showed moderate to severe degenerative disc disease and a 2015 CT showed a mass in plaintiff's thoracic spine and scarring. Tr. 367, 369. Nothing in the record belies the aforementioned evidence or otherwise suggests plaintiff's back impairment markedly improved or that he was able to sustain an increased activity level during the adjudication period. *See* Tr. 2074-75 (September 2020 spine x-ray demonstrating no improvement in the cervical, thoracic, or lumbar spine relative to earlier studies), 2199 (Dr. Chong denoting that plaintiff was "medically stationary [as of 2021 and is] trying to alleviate symptoms, that will probably get worse over a lifetime"); *see also Christina L. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4547345, *3 (D. Or. Sept. 29, 2022) ("degenerative disc disease is a condition that, by definition, progressively worsen over time") (citation and internal quotations omitted); *Dahl v. Comm'r of Soc. Sec. Admin.*, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even "mild degenerative disc disease can have disabling effects") (collecting cases).

Page 13 – OPINION AND ORDER

This is true even though, prior to the amended AOD, plaintiff had been treated with spinal surgery, spinal injections, physical therapy, and multiple medications. Tr. 354-377. And, during the adjudication period, plaintiff continued to seek treatment, including physical therapy and new medications. Tr. 447-48, 541. In the context of the long-standing nature of plaintiff's condition and the limited benefit of more aggressive interventions in the past, the treatments undertaken during the adjudication period are not inconsistent with disabling pain. Cf. *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated"); *see also Laura Jeannette D. v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2707431, *4-6 (D. Or. Mar. 30, 2023) (post-DLI evidence that relates the claimant's ongoing symptoms to the adjudication period can be sufficient to establish disability). Additionally, given the record before the Court, the routine examination findings cited by the ALJ do not constitute substantial evidence. *See Kimberly M. v. Comm'r Soc. Sec.*, 2020 WL 416274, *3 (W.D. Wash. Jan. 27, 2020) (reversing the ALJ's decision as to a medical opinion where, amongst other reasons, the ALJ did not explain how the claimant's "routine findings" were inconsistent with the assessed limitations). The ALJ erred in evaluating Dr. Chong's opinion.

**IV.  Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability.

*Id.* at 1100-01 (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful error in regard to plaintiff's back pain testimony and Dr. Chong's opinion. Indeed, there is not a single medical opinion in the record suggesting that plaintiff could perform work consistent with the RFC. Even the state agency consulting sources opined that plaintiff "retains the ability to hear and understand simple oral instructions" and "is limited from work environments with concentrated exposure to background noise." Tr. 59, 62, 74, 77-78. Although the ALJ purported to accept the state agency consulting source opinions, the RFC does not appear to adequately capture these limitations. Moreover, the VE testified that a person who could only understand simple oral instructions would not be capable of plaintiff's past relevant work. Tr. 51.

In addition, the Court finds that the record has been fully developed and no useful purpose would be served by further administrative proceedings. Plaintiff's DLI lapsed in March 2019 and the record is replete with evidence regarding plaintiff's back pain and attempted treatments.

Further, crediting Dr. Chong's opinion that plaintiff would miss four or more days of work per month would result in a finding of disability. Indeed, the VE testified that an employer would not tolerate that level of absenteeism. Tr. 50-52.

Lastly, the Commissioner does not proffer, nor does this Court find upon extensive review of the record, any evidence that creates serious doubt as to whether plaintiff is disabled. Plaintiff was nearly 56 years old at the time of the amended AOD, and nearly 58 years old as of the DLI, and the medical record makes clear that he suffers from longstanding and significant back impairment that is unlikely to improve.

Page 15 – OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for the immediate payment of benefits.

IT IS SO ORDERED.

DATED this 26th day of October, 2023.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge